Case number 11-2451 Thomas Spikes v. Thomas Mackie. Oral argument is not to exceed 15 minutes per side. Mr. Lawrence for the appellant. Good morning. May it please the court I'd like to reserve 3 minutes for rebuttal. Okay. Now, I guess I'd like to start off with something that at first glance doesn't look like it applied. Now, suppose you're being offered lunch today and somebody says lunch is going to cost you $20. Well, if you're being offered a lobster dinner, it's a great deal. But if you're offered a hot dog and french fries, then it's a terrible deal. Now, in the context of lawyers, we expect the lawyer to be there telling you what the facts are so that you can adequately judge the wisdom of taking a deal. Now, in this case, the prosecutor got up there and said, Sir, if you don't take this deal, your minimum sentencing guidelines are 40 years and they go up from there. Michigan doesn't even have sentencing guidelines that start at 40 years. Where did the prosecutor come up with it? Well, in the U.S. District Judge opinion on page 13, he tries to explain how it is that the prosecutor, though acting nobly, could so totally mislead and misinform this defendant. Mr. Lawrence, let's assume that it was wrong. In your analogy, you don't have a problem if the maitre d' came up and said, By the way, you're only getting a hot dog for your $20. And that's exactly what the judge did here. As I see it, as I read this, whatever misunderstanding or miscorrection, whatever should have been corrected, was corrected by the judge prior to accepting the plea. So what's the problem? Well, there's a couple of different errors here. And the main error, one of the main errors, is 40 years. The judge never told the defendant, by the way, that 40 years, that's a crock. It's a lie. But the voluntariness of the plea is really judged by what goes on at the plea colloquy. And it's really an inquiry into the communication between the court and the defendant. It's not an inquiry into what some prosecutor might have said at an earlier time to him. Well, it's our position that the judge and the defense lawyer both had the constitutional obligation to step forward and say, look, you have just been given improper information by the prosecutor designed for the very purpose of getting you to take a deal that you might not otherwise take, but for the fact that you're being tricked with a threat of 40 years that could not happen. And I've cited lots and lots of case law that in order for a plea to be intelligent and voluntary, the defendant must be aware of the consequences, and that includes the consequences of what he is avoiding. Didn't the judge tell him pretty clearly what the consequences were, in fact, concerning the concurrent and consecutive sentencing situation? The judge did tell the defendant what he would be getting, although that itself was confusing, a thing I'll get to in a moment. But the judge then corrected what the defendant would get without the deal. The defendant has this hanging over his head, this 40 years. It's a threat. It's a false threat. It could have no other function than to persuade a defendant into taking a deal which he would not otherwise take. That's the whole reason for stating the 40 years. The prosecutor couldn't have pulled it out of a book. It's not in any book. The prosecutor made it up. And the defense lawyer. I can readily see why this defendant was not happy with his defense lawyer, because his defense lawyer should have stood up immediately and said, Mr. Spikes, you're getting false information here. But he didn't do that. Instead, the lawyer apparently, perhaps, wanted the deal to go through and therefore didn't want to mess things up by seeing that the defendant had proper information. He wanted what deal to go through? What deal did he want to go through? The deal where the defendant pleads guilty and gets a guideline sentence. I thought you said they weren't any guidelines. Well, that's just it. When they went into the time of sentencing, the guidelines were 171 to 285. That's in months. Then the defendant says, Judge, I have a problem with my lawyer. Judge says, Spikes, get out of this courtroom. You can't stay here anymore. And then while he's absent, they raise the guidelines to 225 to 375, and they give him a sentence of 312 months plus the 24 for felony firearm, which could not have been given under the guidelines that were stated to this defendant at the time he was ejected from the courtroom. Therefore, it's our position that this ejection from the courtroom is not only manifestly an abuse of discretion and unconstitutional, but is also prejudicial. This defendant, it's not Illinois v. Allen. He didn't threaten to kill the judge. He had already been sentenced to what, 24 or 26 years, is that right? What was the original sentence on the crime? Well, there was a different conviction that he had where he did receive a 22-year sentence, and certainly this conviction is playing a role in that regarding the sentencing guidelines. If I get this conviction reversed, then I'm going to go back on the other conviction and ask that it be recalculated regarding the sentencing guidelines. Didn't the judge tell him that the sentence on the guilty plea before him would be a concurrent sentence and would end up being an additional four years or something along that line? Well, a logician could certainly gather that. I don't know what a logician would gather, counsel. I'm asking you if this judge didn't tell him that. What the judge told him is that if you take this deal, it's four years, and that's what the defendant said that he believed. He didn't believe 26. He believed four. That's what he told the judge.  That's what the defendant said. Well, that's absurd. Well, it may seem absurd, but it's the exact words of the judge. The exact words of the judge were, you get four years more for this. He said, if you want to look at it that way, it's four more years on top of what you otherwise had, but it's a total of 28 or whatever the total is. You're just mischaracterizing what the judge said. Yeah, you're not helping us, counsel. You're just making stuff up factually that the record demonstrates is not true. And also, while we're talking about that, you told us that Mr. Sykes was removed from the courtroom. He was, but that was during his sentencing. That was not during his change of plea. So the question of whether he was properly advised of the penalties at the change of plea hearing is not affected at all by his removal from the courtroom. That's right. Those are separate issues. The first issue is that if you tell somebody, if you don't take this plea, you're getting 40 years minimum. And that's simply not true. The judge didn't tell him that. Counsel, you're just making up facts. The judge told him the truth, didn't he? The judge told him what he would get. The judge did not tell him what he was avoiding by taking the plea. He was directly misinformed by the prosecutor. The judge had a constitutional responsibility to stand up and say, the prosecutor told you wrong, Mr. Sykes. Mr. Lawrence, it may just be a matter of style, but I really think your advocacy would be more effective if you didn't point your finger in the direction of the panel. Yes, Your Honor. Could I ask you a pretty simple question? Yes. What's your client's real name? My understanding is he isn't even Thomas Sykes. His real name is Sylvester North. So why are we handling an appeal that will go into the record books on a fake name? Just out of curiosity. Because that's the name under which the state of Michigan prosecuted him. So you wouldn't be opposed to us footnoting this with his real name, assuming we could figure out what it was? Not at all. That would be appropriate. And as an officer of the court, his name is what? His name is Sylvester North. And I do have his mother in the courtroom to confirm that if it was needed, but I don't think it is. All right. That's fine. You answered the question. Thank you. Now, I guess I would take the position that the moment that 40 years was stated to this defendant, it had to be corrected or any plea would be involuntary because the defendant would be acting on the basis of incorrect information given to him in the courtroom by an officer of the court. And I also take the position that it was completely acceptable for this defendant to say, I don't want a lawyer who allows the prosecutor to misadvise me and to trick me. And I also believe that those few words that the defendant said in the courtroom at the time of sentencing don't even come close to a basis to eject him from the courtroom. Let me ask you a question about this. We'll take this calmly, one step at a time. His beef, as it's expressed in your pleading, seems largely to be this difference between 24 years and four years. And I understand, I think, your argument that he was hoping to preserve his appeal in the other case, get that reversed, and then only do four years. Roughly speaking. Am I right so far? That is one of the several complaints. I got it. Now, as it turns out, he has appealed the other case and he's lost at all stages, including at this court. That's over. That's done with. He's stuck with that. So he can't show that his situation would be different were he to have won that because, in fact, he lost it. Right? He did lose it. So now we are at the point where he got exactly what the plea agreement was. And it strikes me what's missing from this, aside from your argument, is he doesn't claim that he would not have taken the plea but for the 40 years. I mean, there's a lot of arm-waving about the 40 years. I get that. But where do I find that he wouldn't have taken the plea? The 40 years doesn't seem to have been an issue to him at all in his colloquy with anybody. Well, he was ejected from the courtroom. He didn't have a colloquy. He was ejected in sentencing, not at the time of the plea. Yes. Well, at the time of the plea, well, he has stated as many times as possible the very first thing he said at the time of sentencing, Judge, this lawyer has misinformed me. The real fact is, and the judge basically said, Shut up. Get out of the room. We'll hear this without your input. We don't want to hear what you have to say. All right. One last time. Where do I find an indication, aside from your argument, that he would not have taken the plea because of the 40 years as opposed to the difference of opinion as to how you analyze whether the plea deal was 24 plus 4 or 28? Where do I find that? You'll find it in an evidentiary hearing, assuming we get one. So you haven't gotten an evidentiary hearing, so I can't find it there. So where else do I look? You look to common sense. If somebody tells you, we're going to give you a year, it makes a big difference if the alternative is two years or the alternative is 20 years. You've answered the question. I look to common sense. I got it. Thank you. Anything further? All right. Miss Rivard? River? Rivard? Rivard. Good morning, Your Honors, and may it please the Court. Liz Rivard, appearing on behalf of Warden Mackey. I won't belabor on the mandates of EBPA. I'm sure this Court is very familiar with what it requires. We just request that this Court affirm the District Court's decision for three quick reasons. First, Spikes has failed to identify any clearly established Supreme Court precedent, stating that the trial court must indefinitely continue a matter until medically unavailable counsel who has no prospect of returning to the practice of law might be able to return. Secondly, even though the trial court had warned Spikes that he may be removed in that colloquy, any error in removing him is harmless under Brecht because he received the exact sentence that he bargained for. And lastly, regarding the voluntariness of his plea, he can't overcome the trial court's not-once-but-twice determination by clear and convincing evidence. Now, I'd like to point out real quick that any reference to Oakland County in the District Court's decision and in any briefs was just simply a misstatement. All of this occurred in Wayne County. And regarding the 40-year minimum, I do have a possible explanation of how that may have come about. I did talk to the prosecutor's office. They could not find any of Mr. Cherzynski's notes to see how he may have arrived at that determination. However, there's some evidence in the record to show that he was in fact looking at the, if you look at the statute, MCL 777.62, which is what applied in this case, grid F6, the maximum monthly in that grid was 450 months. If my math is accurate, that turns out to be approximately 40 years at 37 1⁄2 years. And when you look at the February 2 transcript, he informs the court that the top end of the guidelines is about 40 years. And I think that's where that began. And I think kind of like how things were misstated regarding Oakland County, when they got to the actual plea discussions and he was thinking the minimum sentence under the maximum guidelines could have possibly be about 40 years, then applied Michigan's two-thirds rule under MCL 769.34 to get to the magic number of 60, which 40 over 60 is two-thirds. So that, I think, is how that came about. Regardless, as judges... Is your argument that the prosecutor was right? No, my argument is that this plea was not illusory under McAdoo. It really doesn't matter. No, it does not. If he was wrong, it doesn't really matter why he was wrong. Correct. And as this court indicated... So the whole argument of your opposing counsel here is that 40 years was mentioned, spikes or whatever his name is, listened to that and heard that, and that's why he got this deal. So cut to the chase. How do you respond to that? Under McAdoo, this plea is not illusory on that basis because he received the exact bargain that he bargained for. But the claim is he bargained for it based on false information. It wasn't... Forget whether it's illusory or not, that he was misinformed by the government and that either his counsel or the court or both had a duty to correct that. So what's the response? The response is, as you pointed out on direct, is that the trial court informed him that he was facing 26 years at a minimum. And he realized he was facing 26 years because he asked the court to clarify that 26 years is not consecutive, correct. So our argument is that he knew he was facing 26 years, not 4 years. And so because the court under... But that doesn't seem to address what I think is the claim here, not whether he was advised properly as to the plea agreement, let's assume that he was, that he entered into the plea agreement based on a false impression that he got from the prosecutor that the court had a duty to correct. Assuming that I understand that argument correctly, does the court then have a duty when it's explaining the 26 years to say, and by the way, you heard reference to 40 to 60, that's false? That, Your Honor, I'm not sure. But my response would be, under both the armed robbery statute and how his guidelines were correctly scored, he faced life in prison. And that would be my response, is that he was advised that he faced life. And so that this 26 years... So we find someplace, I had forgotten that, do we find someplace in the transcript that somebody said the real maximum here was life? That is not in the transcript, the sentencing transcript. I'd have to double check and if Your Honor would like... We're not talking about sentencing, we're talking about the plea. At the plea colloquy, the judge informed him he was facing life. So your argument, as I understand yours, is prosecutor said 40 to 60, maybe you can figure out some reason why he would have said that. You concede it's wrong, but it doesn't really matter because the judge said something even higher and that was right. Is that the bottom line here? That is the bottom line, Your Honor. And quite frankly, if I may... Did you cite to that, to the judge's statement with respect to life in your brief? That I do not call. I believe, and Assistant AG Andrea Christensen wrote the brief, I believe she did mention that in our brief to this court, that the judge informed him that he was facing life under the armed robbery statute. Can you just tell me one thing about Michigan procedure here? All of the charges, the one that he got 22 years on and the subsequent ones, were they all in one indictment? They were all concerning one crime, as I understand it, or one criminal episode. Is that right? That I do not believe. According to the docket sheets in Wayne County, what I will call the assault convictions, those were the ones that he had received the two-year felony firearm plus 22 years for the AWIM, assault with intent to murder conviction. So that equates to 24 years. That was a case that was filed in 2001. And that was a case separate from the robbery completely? That was, from what I understand from what the charges were, that is a case entirely separate from the robbery. The robbery wasn't charged until 2004. But was it part of the same? That I don't believe so. Could have been completely separate or maybe part of the same thing. Whether it was part of an ongoing enterprise of criminal activity, I do not know. From what I gleaned from the record, I have the understanding that it was a separate incident. Because it would be unusual to, if it were everything was in one indictment because it all grew out of the same crime, it would be unusual to separate them like this. No, they were all in separate indictments. And then the marijuana case that was dismissed as a benefit to this plea, that was a 2002 matter. And he again faced felony firearm in that one as well. So to clarify this court. That's fine. I just didn't understand what the procedure is there. Back to the point Judge McKeague was asking you about earlier. I think the relevant portion of the plea colloquy is found at page 10 of the transcript of the February 7th proceeding. It's page ID 219 in the record. And that's where the court asks Mr. Spikes if he understands that the statutory maximum penalty for armed robbery is life. And do you understand that sir? Mr. Spikes responds yes. And then the court asks him if he understands that the statutory maximum penalty for felony firearm is two years. And Mr. Spikes indicates that he understands that. Correct. And under King v. Dutton, a Sixth Circuit case from this court, so he was advised of his maximum under both crimes. And I believe that that remedies any possible misinformation that might have been gleaned from the prosecutor stating that he was facing 40 years. Regardless, that was never even brought up in any of his state court documents. And I believe if he had actually relied upon that statement, that that would have been part of his arguments there. And instead he decided to challenge the consecutive matter, which was proper under Michigan statute. So I guess. But it's sort of, I mean, in order for him to have been misled in the way Mr. Lawrence suggests by the prosecutor's representation, there would also have to be some omission by the trial court in questioning him about the maximum possible penalties, right? Correct, Your Honor. I mean, I understand this four years v. 28, or whatever it is, as a separate issue that Mr. Spikes claims renders his plea involuntary. And what's relevant to that is all this exchange about the concurrent sentences and it being four years additional because the sentences will run concurrently. But it's not just a four-year sentence. That's all relevant to that, but it seems to me this earlier claim about the prosecutor's mistake really goes to whether he ultimately was told what the maximum possible penalties for the crime were. That is correct, Your Honor. And so I guess unless this court has any questions on any of the other issues or would require any letter briefing, I'd be happy to entertain any other questions you might have. Anybody have anything else? No. Thank you, Your Honor. All right, Mr. Lawrence, you had your three minutes. I'll try to be brief. I think that we need to take a look at the difference between the state and federal sentencing guidelines here. Federal sentencing guidelines are only recommendations, yet even in federal court you can't tell the defendant the wrong guidelines and have the plea be voluntary. Here in state court, the sentencing guidelines are mandatory. You can't go outside them without substantial and compelling reasons supported by clear and convincing evidence. Well, it's a matter if under Michigan law a court is required to advise the defendant of the guidelines under Michigan law, that would be a state law requirement, not a constitutional one, because the constitutional requirement is that he be advised of the maximum possible statutory penalties he faces in entering the plea. So that's your constitutional issue, isn't it? I submit, Your Honor, that you're overlooking something. There's another constitutional requirement. That is the constitutional requirement that you not mislead the defendant. And if you mislead the defendant about a matter of state law, you're still misleading the defendant and therefore making the plea involuntary. It's unconstitutional, you're saying, for a prosecutor to get up and say to the judge, we think the penalty is such and such and be wrong about it. That's unconstitutional. When the judge straightens it out by saying the maximum penalty is what it really is, that's a constitutional error? The judge never did straighten it out. That's the whole problem. The 40 years that the defendant was going to be dead if he didn't plead, no one at any time told him, oh, by the way, we didn't tell you the truth about that. The 40 years was on the defendant's mind at the time that he pled. And then when he learned between the time of plea and the time of sentence that his lawyer hadn't done his job, hadn't properly informed him that the 40 years was something invented by the prosecutor, and he said, excuse me, judge, I have a problem with this lawyer. The judge kicks him out. Then, while he's absent, he raises the sentence again. From what Supreme Court precedent do you derive the principle that a defendant has a constitutional right not to be misled by a prosecutor's statement, whether or not it's inadvertently made? Several cited in the brief, Brady v. United States, United States v. Rodriguez, Sixth Circuit, Maples v. Stiegel, United States Supreme Court, Hill v. Lockhart. And then two brand new cases from U.S. Supreme Court, just decided last year, Missouri v. Frye, Lafler v. Cooper. I believe, if you are done with your list of cases, I believe we can look at those ourselves and determine whether, in fact, they support the principle for which you just cited them. We appreciate the arguments that both of you have given. We'll consider the case carefully. And since there are no other cases to be argued, you may adjourn court.